and welcome back. Thank you. I would like to reserve two minutes of my time for rebuttal. And I represent Santiago Cortez. Crosby compels reversal in this case. This court was there and must now be guided by the uncontroversial principle that a major variance must be supported by a significant justification. But the district court here imposed an extreme variance without justifying it by meaningful reference to the 3553A factors. Two central considerations crystallized by this court in Crosby and before it in Cookson really dictate the outcome here. The first is that the massive free ranging upward variance was untethered from the guidelines resulting in an arbitrary term. And the second is that the sentence creates clear unwarranted disparity. And the district court offered no reasoning to show that it was warranted resulting in what this court called a facially unwarranted sentence in Crosby. So the failure to consider the guidelines and the district court's decision to vary upward for reasons already accounted for the guidelines and then not explain why this case warranted that kind of variance is really the crux of the problem. The guidelines account for the conduct that preoccupied the district court in two ways. Mr. Cortez received a ten level offense level increase for his prior and he also received three criminal history points. And both of those provisions are the most, that's the highest increase a person can get under the relevant guidelines for this type of prior conduct. So and the other thing is that the guidelines, the criminal history rules in the guidelines are the most often empirically studied and validated. So to the extent that his prior reflects on any of the goals of sentencing, the guidelines account for that. And that's a process that the commission is continually undertaking and that does deserve some deference or at least consideration. So we've said over and over again that the fact that the guidelines already consider a factor, any factor in terms of setting the sentence does not mean that the sentencing court can't also consider that factor. Would you agree that's a correct statement of the law? Yes, that's true. And certainly the court can consider that factor and determine that the guideline range doesn't adequately reflect how that plays into sentencing. The problem is that the district court didn't even express that. I mean, that's what makes this case like even kind of more egregious than Crosby in that there was no policy disagreement with the guidelines. She never said, I understand that this has affected his guideline range but that range is still insufficient. And not only that, but a sentence double the high end of the guideline is necessary for this person because this prior is so extreme in my view. She didn't say that. Did she indicate that he had three prior convictions that were too old to have been considered in the guideline calculation and that she considered all of the prior criminal history? And one of those that wasn't considered was the manslaughter that had been originally charged as murder and she took that into account. She did reference that prior. There's two things about that. That is also something that is factored into the guidelines even though it gets zero points. There's a reason and that's because the commission has determined that convictions of that age don't make any of the factors, don't tie into the factors in a way that suggests a person should get a higher sentence. But even if she saw fit based on that to increase his sentence. Which she's allowed to do, right? I mean, the guidelines are guidelines. Right. But they are also the keystone or the starting point. Yes. They're not necessarily the ending point. They're not, but if a court imposes an extreme variance that it doesn't explain even in light of a disagreement with the guidelines. Like in Crosby, there was a policy disagreement with the enhancements and the district court explained that. That's true in Cookson too. But then didn't explain why a variance on top of that difference was appropriate and the court didn't do that. It didn't go through what the other allowable sentences were or evaluate, think about how the guidelines are treating these kinds of convictions and why Mr. Cortez's convictions are so problematic that they warrant 60 months. And it also ties into disparity because she didn't point to any other case where someone like Mr. Cortez has received a sentence like this one. And Gall makes clear, and its progeny, that first of all, that the guidelines are created and re-evaluated with all of these considerations in mind, which is why they are the starting point. And second of all, that some sort of explanation that ties into the extent of the variance is required and she just didn't do that. She seems to have rejected the guidelines and come up with her own number without giving us any way to know why that is, that that was the sentence that was necessary for this person. And that's the kind of lacking explanation that this court has found substantively unreasonable, at least in the case of downward variances, which in fact are entitled to greater solicitude than upward variances. So it certainly seems that the same problems presented in Crosby would require reversal here. He has a, the defendant had a history of violent criminal conduct and, you know, expelled from the country, came back. Couldn't the court reasonably determine that the previous sentences were not adequately deterring his behavior and very upward for that reason? And we are on abusive discretion, right? Yes. She could think about deterrence in fashioning her sentence. It doesn't really track here because Mr. Cortez served 12 years for the prior she was most concerned with. And his illegal reentry offense is not really connected to that prior offense. In terms of illegal reentry, that's another thing that the guideline that captures that conduct is, is considering deterrence and the punishment that is recommended in the guidelines achieves that goal. So it doesn't, without a more comprehensive explanation for why he needed to be deterred this way with this amount of time in terms of his instant offense, I don't think that renders this sentence substantively reasonable. And there, like the previous case, there was no objection to the PSR, right? There was no objection to the account in the PSR, but the defendant did testify, though. He did, yes. And the account set forth in the PSR itself, it doesn't set out one version of events, so it's already inherently kind of disputed within the PSR. It's allegations that he said something different than she said, and that's what came from the police report. But I think this is clearly a case where all we know is what he's actually convicted of because the factual account in the PSR doesn't establish a fact, even if you take it all as true. What do we do with the fact that his own counsel said he admitted to raping her? Well, there was some sort of back and forth at sentencing. Her point was that he accepted accountability for his actions, and that was kind of an unavailing tactic at sentencing, but he then made sure to correct that and say that it wasn't what he did. But even so, I mean, that conviction counts for three points. That's the maximum a prior can count for. And even if you double it, or even if you put him in criminal history category six, which is where people with the most extreme criminal history categories are, she's still carried upward on top of that. So I think that's the heart of this case, is that there isn't any justification for why he belongs in that group with people who could have any number of criminal history category points, or why he then even is worse than those people in terms of his culpability. And her treatment of his prior, I mean, that's the only thing really in the record that stands out as something that she was troubled by, and the uncounted prior. But given the contradicting accounts... I have a question. I have a question, please. In your research, I've been somewhat troubled by the extent of a 60-month increase in this case. In the Tenth Circuit, what is the most that we have that we can look at, contrary to the last case that we were discussing? As I recall, this was a, what, 21 to 27-month-something, and that the guideline range would have been around 15 months, and yet we vary up to 16 months in regards to this case. So again, I want help in pointing me to Tenth Circuit cases that's comparable with this kind of variance. Do you have any of those? I do not have a Tenth Circuit case with a comparable sentence, and that is the problem. The district court did have the JSON data before it, which, as you mentioned, Your Honor, suggests that the average, I think, is 15 months, and also that maybe 2% of people in his situation received an upward variance, and we don't know of what size. But it's incumbent upon the district court, particularly because here, neither of the parties requested an upward variance, to point to that data. And that is what this court has said, that there needs to be some kind of data or comparable case. In the case Lente, where this court affirmed a sentence, I think an upward variance, for substantive reasonableness, it said it was troubled by the discretion that a court might have if it disagreed with the guidelines, but that in this case, that case, there was such a thorough evaluation of other cases, that it meant the sentence was substantively reasonable. And that's the kind of record that can support a significant upward variance. That doesn't exist here. And so that is a substantive error at sentencing by the district court, that the record doesn't contain any reference to some other case or some data that suggests that this sentence is appropriate for this defendant. And I think that applies, too, even if you're looking at uncounted, you know, there aren't any cases where you say, oh, someone had an uncounted prior that is severe, and so this is how they vary upward. Or someone had this kind of prior, and that's why they varied upward. We don't have anything now. And so it impedes review by this court, which is a reversible substantive error as well. If there are no further questions, I'll reserve my time for rebuttal. Thank you, counsel. Thanks. May it please the court. My name is Emil Keeney, and I'm here for the United States. To address the substantive reasonableness, the district court did explain why it was imposing an upward variance. It explained the defendant had a repeated record of violent conduct in this country, and despite receiving on his last conviction a 12-year, what she characterized as a very lengthy sentence, he still came back to the United States, even after he knew he shouldn't do that. So the district court tied that in with the 3553A factors and said, we need to protect the public because he's violent, and we need to deter his conduct. We need something extra here to deter additional criminal conduct because he's not being deterred. Well, even if all of that is true, how do we evaluate a 60-month variance? Well, I think the... I mean, can the variance be too big, even given the explanation? I mean, the court's case law leaves it open for that. The court, the case law, this court's case law says, you know, we're going to, and the Supreme Court, by the way, says that, you know, if there's an upward variance, the court should look at it with greater care. I forget the exact language here, greater scrutiny. But this court hasn't really reversed one of those that I'm aware of. So I don't have any examples of what would be too much, but the concept, conceptually, that is true. It can happen. But I don't think that's true here because this is comparable to some of the other cases. Are you going to ask a question? Is there a, there's no 10th Circuit case with a, basically, a sentence double the upper guideline range on substantive reasonableness? No, I cited two cases, page 20 of my brief. Now, those are non-presidential cases from this court, but in the one, Myakai, the court varied upward from, district court varied upward from a top end of 16 to 48 months in this court affirmed. And in Kaivinakwa Sanchez, this court, the district court varied from a 7-month top end guideline range to 24 months. Now, that's not the same numbers, but it's comparable in percentage. One of those is at least three times, or let's see, no, both of them, three times the guideline range. Now, this is around, a little over double the guideline range here, and the numbers are different. I believe they were. Kaivinakwa Sanchez, I know it was because that was my case. I think Myakai was as well. So, this court has affirmed in similar circumstances in the past. I think the claim that on unwarranted sentencing disparities, the district court had to point to some other similar case. I mean, well, the district court didn't do that, but the district court could have done that, as I've shown in my brief. Does the district court have to do that? I mean, do we have case law that says the district court has to do a search for other cases and cite them? I'm not aware of it. I mean, Crosby says that if a district court does do that, then I think this court may have been trying to encourage that and say that that would support it, but Crosby didn't say that was necessary, and I'm not aware of any other authority that And here the defendant didn't point to any cases saying, wait a second, hey, look at this, look at that. She just pointed to the JSON data, which is not, by the way, there is a difference between the JSON data that was in the PSR and the one that we're now seeing for the first time on appeal. In the JSON data that was in the PSR, it didn't, that data didn't, at least the probation officer didn't include the data about what percent of cases there had been upward variances or downward variances, but it did say that there was an average sentence of 15 months. And so this court, for the same guideline range, so this court, the district court was aware at least of that. On the fact, the first claim, well, of course, I'm happy to answer additional questions about substantive reasonableness, but I also wanted to address the first claim that was presented here, which is that the evidence, the facts stated in the PSR are not sufficient to support the district court's belief that there was a sexual assault or rape. And we think they were. The facts were that the victim reported, and the unobjected to facts, I should say, is the victim reported that the defendant threw her to the ground, dragged her behind some bushes, forcibly removed her underwear all the time she's saying no, and the PSR also reported that the defendant admitted, yes, I had sex with her. I think the district court could look at all that and think, yeah, I think there was some non-consexual sexual conduct going on there, and I don't think that's, especially on clear error plus plain error review, that this court could write an opinion saying that the district court just completely blew it in thinking there was. And in addition, you have the defense counsel sentencing the attack that she took was to say, look, I know my client here, he did some bad stuff. He had sex with this woman, but at least he admitted it. So I think that's a further reason for the district court to think that there was a non-consexual sexual encounter going on there. We have the same problem that we were discussing in the previous case about the district court unhappy with the prior plea bargain sentencing and basically using this illegal entry case to enhance a sentence that it thought should have been presented for the prior crime. No, I don't think we have that problem here. If you look, and I forget where it is, but it's in Volume 3 of the sentencing transcript between, I think, pages 30 and 39, but I could be wrong about that, but what the district court characterizes the earlier Nevada court sentence as a very lengthy sentence. The district court expressed no dissatisfaction or thought or belief that the Nevada court had not appropriately sentenced Mr. Cortez. So I don't think we have the same issue at all. I mean, I understand this district court has said, this judge has said things similar and maybe may have said things like that in other cases, but not in this case. Well, the district court did, though, seem to be very concerned with the facts of the prior crime. That's correct. I think that's fair. So I guess it's the same issue I think Judge Timkovich raised on the prior case, which is, you know, is the district court actually sentencing for the illegal reentry really also sentencing again for the prior crime? Well, I don't, the district court didn't say anything like that in its explanation. The district court said... Well, it would be pretty foolish for the district court to say that, right? Right. But still, the district court didn't give that as an explanation. The district court said, look, he's acted violently before. I need to protect the public. And that's an appropriate consideration even on the illegal reentry offense. And the district court said, look, he's not being deterred. He's not been deterred. Is it the government's position that so long as the district court walks through the 7353 factors and, you know, basically creates a record, that it can vary above the guideline range anywhere up to the statutory maximum without being substantively unreasonable? Hmm. I mean, I don't know that I can draw a clear blight line rule for you. I think there are cases in which the district court could vary upward to the statutory maximum depending on what those 353A factors were. And depending on how much of a variance percentage-wise and perhaps month-wise that statutory maximum is from the guideline range. So, for example, if there was a shorter, if the statutory maximum here had been 60 months, I think it's actually 20 years. But I think the district court could have done that. I think it would still be reasonable. But if she had varied upward to 20 years, I think my opponent would have a much stronger case. But I can't, I don't have a right line that I can offer you on that, Your Honor. And the cases that this court and the Supreme Court have decided don't really provide me with a basis to give you one. Oh, on the third issue, I'll just say, Your Honor, that the issue was if you disagreed with me on any point, you thought, you know, yes, there needs to be a remand. I don't think this needs to be assigned to a different judge. There's been no accusation of personal bias. And I think the district court judge hasn't shown any indication that she would be unwilling to follow this court's directions in the past. And nothing about this particular issue provides a basis for that either. I mean, it's not uncommon on reversals to say for this court, when this court does reverse, to say to a district court, hey, this is a fact you shouldn't have considered, or this is a fact you shouldn't have considered in this particular way. And district courts are generally trusted to follow this court's instructions absent some indication that they're not going to. And I don't see anything in this record that would provide that. So, Your Honor, unless there's any additional questions or... Judge Bolzar? No. Okay, thank you. We would ask you to affirm, and thank you very much. Ms. Elliman, you had something in the bottle? I'd just sort of like to address the question, Judge McHugh, that you posed about whether if the court invokes factors, it can then just vary up to the maximum. And I think affirming this sentence would send that message, because what the judge did was list the factors and then impose a sentence that didn't have a grounding in the guidelines. And in some ways, this kind of presents the question, I guess, what the role of the guidelines is at sentencing post-Booker. But that's a question we have the answer to. And the answer comes from Gall. When there's an extreme variance, the court needs to offer sufficient significant explanation. And it's uncontroversial. And this is something that this court has applied correctly in its previous cases, most recently in Cookson and Crosby. And Gall also pointed out that we accept that the guidelines are the result of careful study of thousands of cases, and it's a constantly evolving process. And so we do owe them consideration. And so for that reason, the district courts neglect of the problem here. And I think it is true that this court doesn't have published cases reversing upward variances on this theory. But I think that is deeply troubling, because constitutionally, the same standard has to apply to an upward variance that applies to a downward variance. And with that, I will ask that this court reverse. Thank you. Council, we appreciate your arguments. Excused, and the case is submitted.